CASE NO. 20-51016

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

MICHAEL CARGILL,
*Plaintiff -Appellant*,

v.

MERRICK GARLAND, U.S. ATTORNEY GENERAL; UNITED STATES DEPARTMENT OF JUSTICE; REGINA LOMBARDO, IN HER OFFICIAL CAPACITY AS ACTING DIRECTOR OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES
*Defendants-Appellees*.

---

On Appeal from the United States District Court
for the Western District of Texas, No. 19-349
(Hon. David A. Ezra)

---

## BRIEF OF THE CATO INSTITUTE
## AS *AMICUS CURIAE* IN SUPPORT OF
## PLAINTIFF-APPELLANT

---

Ilya Shapiro
  *Counsel of Record*
Christian Townsend
CATO INSTITUTE
1000 Mass. Ave., N.W.
Washington, DC 20001
(202) 842-0200
ishapiro@cato.org

March 15, 2021

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Case No. 20-51016

*Michael Cargill v. Merrick Garland, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Person or Entity | Connection to Case |
| --- | --- |
| Ilya Shapiro | Counsel to *amicus* |
| Christian Townsend | Counsel to *amicus* |
| Cato Institute | *Amicus curiae* |

*Amicus* Cato Institute is a Kansas nonprofit corporation that has no parent companies, subsidiaries, or affiliates, and does not issue shares to the public.

/s/ Ilya Shapiro

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ............................................................i

TABLE OF AUTHORITIES ................................................................. iii

INTEREST OF *AMICUS CURIAE* ..............................................................1

INTRODUCTION AND  SUMMARY OF THE ARGUMENT .............................1

ARGUMENT: DEFERENCE IS UNWARRANTED WHERE THE AGENCY'S
DECISION MAKING DEMONSTRATES NO MORE EXPERTISE THAN
A ROUTINE GOVERNMENT BRIEF ...........................................................3

CONCLUSION .........................................................................................6

CERTIFICATE OF COMPLIANCE ..........................................................7

CERTIFICATE OF SERVICE ...................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Cargill v. Barr*, No. 19-349 (W.D. Tex. Nov. 23, 2020)............................................2

*Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) ..............................................2

*Guedes v. BATFE*, 920 F.3d 1 (D.C. Cir. 2019) ......................................................2

*INS v. Aguirre-Aguirre*, 526 U.S. 415 (1999)..........................................................3

*INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987) .......................................................2

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)....................................................................3

*Marbury v. Madison*, 5 U.S. 137 (1803)...................................................................3

*Yong Wong Park v. Att'y Gen.* 472 F.3d 66 (3d Cir. 2006)......................................4

### Statutes

18 U.S.C. § 926(a) .....................................................................................................4

26 U.S.C. § 7801(a)(2)(A) ..........................................................................................4

26 U.S.C. § 7805(a) ....................................................................................................4

28 C.F.R § 0.130(a)(1) ................................................................................................4

28 C.F.R § 0.130(a)(2) ................................................................................................4

42 U.S.C. § 7411 .........................................................................................................3

83 Fed. Reg. 66,514 (2018) ........................................................................................5

### Other Authorities

Kent Barnett, *Improving Agencies' Preemption Expertise with* Chevmore
    *Codification*, 83 Fordham L. Rev. 587 (2014) ......................................................5

## INTEREST OF *AMICUS CURIAE*[1]

Cato was established in 1977 as a nonpartisan public policy research foundation dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Robert A. Levy Center for Constitutional Studies was established in 1989 to promote the principles of limited constitutional government that are the foundation of liberty. Toward those ends, Cato publishes books and studies, conducts conferences, issues the annual *Cato Supreme Court Review*, and files *amicus* briefs with the courts.

This case is important to Cato because it involves an issue of vital importance to individual liberty: the separation of powers. The executive branch can no more use the administrative process to accomplish legislative goals that Congress declined to enact than the courts can defer to the executive branch's reinterpretations of statutes establishing new crimes. The implications of this case extend far beyond bump stocks to the very structure of our constitutional government.

## INTRODUCTION AND
## SUMMARY OF THE ARGUMENT

In denying deference to the government's interpretation of "machinegun," the court below held that the *Chevron* doctrine "does not apply to criminal statutes."

---

[1] Fed. R. App. P. 29 Statement: No counsel for either party authored this brief in any part. No person or entity other than *amicus* made a monetary contribution to its preparation or submission. All parties have consented to the filing of this brief.

1

*Cargill v. Barr*, No. 19-349 (W.D. Tex. Nov. 23, 2020). *Amicus* agrees. Still, in near-identical contexts involving the same interpretive question, other courts deferred to the government, despite the criminal implications. *See*, *e.g.*, *Guedes v. BATFE*, 920 F.3d 1, 23–27 (D.C. Cir. 2019).

Clearly, courts are conflicted over *Chevron*'s relationship with the rule of lenity. *Id.* at 25 (noting the Supreme Court's mixed messages). Yet this Court can avoid any such doctrinal confusion, by turning to an alternative and relatively uncontroversial basis for side-stepping *Chevron*: Deference is always unwarranted where, as here, the agency failed to bring its expertise to bear in interpreting the law.

Under the *Chevron* doctrine, the presence—or absence—of agency expertise guides courts in deciding the proper roles of the political and judicial branches. *See Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 865 (1984) (grounding deference in the understanding that "judges are not experts in the field" of environmental regulation). When a congressional delegation involves agency expertise, then *Chevron* deference is appropriate because it signals that Congress intended for the agency to assume interpretive primacy. When, however, a court is comparatively expert on the statutory question, then it is the judge's duty to find the best meaning of the statute. *Compare INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987) (denying deference because judges are more expert in resolving "pure questions of law") *with*

*INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (granting deference because the agency is more expert on "questions of foreign relations").

There is no evidence that the bump stock rule was dependent on facts within the congressionally vested expertise at issue here. Because the Justice Department—by its own admission—merely engaged in "legal analysis," the administrative record it built shows no more expertise than any of its briefs, so *Chevron* deference is inapt.

### ARGUMENT:
### DEFERENCE IS UNWARRANTED WHERE THE AGENCY'S DECISION MAKING DEMONSTRATES NO MORE EXPERTISE THAN A ROUTINE GOVERNMENT BRIEF

Not all statutory ambiguities are suitable for the *Chevron* framework. As the Supreme Court recently observed, "some interpretive issues may fall more naturally into a judge's bailiwick." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019). For these sorts of questions, which exist outside an agency's competence, it is incumbent on courts "to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Accordingly, before resorting to deference, a court must first ask whether it is the agency or the court itself that has relative expertise for resolving textual ambiguity.

Sometimes, the answer is easy, because the statute directly implicates agency expertise by including scientific or economic factors for the agency to consider. *See, e.g.,* 42 U.S.C. § 7411 (delegating to the Environmental Protection Agency a duty to promulgate emissions standards for new stationary sources of criteria pollutants).

By contrast, the bump stock rule rests on a catch-all delegation to "prescribe all needful rules and regulations." 18 U.S.C. § 926(a). The statute neither requires nor suggests the involvement of agency expertise in formulating the bump stock rule.

Here, it is important to answer the question: Whose expertise would the court be deferring to? The attorney general—not the Bureau of Alcohol, Tobacco, Firearms and Explosives—is the delegee of lawmaker authority. *See* 26 U.S.C. § 7801(a)(2)(A), § 7805(a) (assigning responsibility to the attorney general for regulations and enforcement under the National Firearms Act and Gun Control Act). Although the Justice Department has delegated the responsibility for administering and enforcing these statutes to the ATF, the latter remains "subject to the direction of the Attorney General and the Deputy Attorney General." *See* 28 C.F.R § 0.130(a)(1)–(2). The attorney general still calls the shots. The distinction is crucial because "the Attorney General has no particular expertise in defining a term under federal law, yet it is what federal courts do all the time." *Yong Wong Park v. Att'y Gen.* 472 F.3d 66, 71 (3d Cir. 2006) (cleaned up).

Turning to the administrative record, there is no indication that the agency employed its expertise during this rulemaking. Instead of employing or even citing technical know-how, the attorney general justified the bump stock rule based on an *ad hoc* "extensive legal analysis." As a practical matter, the government's avowed expertise is no different than the analysis that informs every brief submitted by the

Justice Department, to which courts obviously do not confer *Chevron* deference. Indeed, if "legal analysis" is the operative criterion for determining who should interpret phrases like "machineguns," then this Court is the more expert institution.

To be sure, agencies may acquire what scholars call "legislative expertise," or insight into legislative history and congressional intent through years of enforcing a statute. *See* Kent Barnett, *Improving Agencies' Preemption Expertise with Chevmore Codification*, 83 Fordham L. Rev. 587, 591–92 (2014). But nothing of that sort coincided with the development of the bump stock rule, which instead reflected an abrupt change in what had been the government's consistent and long-held construction of the statute.

In ten rulings from 2008 and 2017, the ATF interpreted the phrase "machineguns" to exclude devices like those at issue in this case. 83 Fed. Reg. 66,514, 66,517–18 (2018) (describing the letter rulings). With the bump stock rule, however, the agency reversed course and outlawed these devices. What changed? According to the Justice Department, the problem with its previous ten rulings was that they "did not include extensive legal analysis of the statutory terms"—even though these terms were the *sine qua non* of the rulings. *Id*. at 66,516. In effect, the government claims that its prior steady interpretation was wrong because the agency had never studied the law it was enforcing. Far from demonstrating expertise, the administrative record raises questions about the agency's proficiency.

In sum, *Chevron* deference is inappropriate because the Justice Department failed to bring its expertise to bear. When it comes to performing "legal analysis" of criminal statutes, courts are obviously more competent than administrative agencies.

## CONCLUSION

Ultimately, this Court may or may not agree with the Justice Department that its interpretation is the best reading of "machineguns." *Amicus* suggest it's not. But the final decision must come from the judiciary; deference has no role to play.

Respectfully submitted,

DATED: March 15, 2021

*/s/ Ilya Shapiro*

Ilya Shapiro
  *Counsel of Record*
Christian Townsend
CATO INSTITUTE
1000 Mass. Ave., N.W.
Washington, DC 20001
(202) 842-0200
ishapiro@cato.org

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of <u>Fed. R. App. P. 29(a)(5)</u> and <u>Fed. R. App. P. 32(a)(7)(B)</u> because it contains 1,254 words, excluding the parts exempted by <u>Fed. R. App. P. 32(f)</u>.

2. This brief complies with the typeface requirements of <u>Fed. R. App. P. 32(a)(5)</u> and the type-style requirements of <u>Fed. R. App. P. 32(a)(6)</u> because it has been prepared in a proportionally spaced typeface in Times New Roman, 14-point font.

<u>/s/ *Ilya Shapiro*</u>
March 15, 2021

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court, who will enter it into the CM/ECF system, which will send a notification of such filing to the appropriate counsel.

/s/ *Ilya Shapiro*
March 15, 2021