**No. 20-51016**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

MICHAEL CARGILL,

*Plaintiff-Appellant*,

v.

MERRICK B. GARLAND, et al.

*Defendant-Appellees*.

On Appeal from the United States District Court
for the Western District of Texas
No. 1:19-cv-349 (Hon. David Alan Ezra).

## NATIONAL RIFLE ASSOCIATION OF AMERICA'S
## AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFF-APPELLANT'S
## PETITION FOR EN BANC REVIEW

Michael T. Jean
National Rifle Association of America –
Institute for Legislative Action
11250 Waples Mill Road
Fairfax, VA, 22030
703-267-1158
MJean@nrahq.org

*Attorney for Amicus Curiae National Rifle
Association of America*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for amicus curiae certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, in addition to those listed in the Plaintiff-Appellant's Certificate of Interested Persons, have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

*Amicus Curiae*: The National Rifle Association of America, Inc. ("NRA") is a non-profit, tax-exempt organization, incorporated in the state of New York. The NRA has no parent company, and no publicly held company has 10% or greater ownership in the NRA.

*Counsel for Amicus*: Michael T. Jean of the NRA.

Date: February 4, 2022

*/s/ Michael T. Jean*
Michael T. Jean

*Attorney for Amicus Curiae the National Rifle Association of America*

ii

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS**................................................ **II**

**TABLE OF CONTENTS** ...........................................................................**III**

**TABLE OF AUTHORITIES** ......................................................................**IV**

**INTEREST OF AMICUS CURIAE**............................................................**1**

**INTRODUCTION**......................................................................................**1**

**ARGUMENT** .............................................................................................**2**

   **I.    CONGRESS DEFINED MACHINEGUNS EXCLUSIVELY BY THE TRIGGER'S MECHANICS.** ................................................................**3**

   **II.    THE RULE OF LENITY RESOLVES ANY AMBIGUITY IN LIEU OF *CHEVRON* DEFERENCE.**................................................................**5**

   **III.    THE POLICIES BEHIND THE RULE OF LENITY ARE FURTHERED WHEN APPLIED HERE WHILE THE POLICIES BEHIND *CHEVRON* ARE DUBIOUS.** ...........................................**10**

**CONCLUSION**..........................................................................................**12**

**CERTIFICATE OF COMPLIANCE** ..........................................................**14**

**CERTIFICATE OF SERVICE** ...................................................................**15**

# TABLE OF AUTHORITIES

**Cases**

*Abramski v. United States*,
573 U.S. 169 (2014)............................................................. 3, 9, 10, 11

*Aposhian v. Barr (Aposhian I)*,
958 F.3d 969 (10th Cir. 2020) ...............................................5

*Aposhian v. Wilkinson (Aposhian II)*,
989 F.3d 890 (10th Cir. 2021) ...................................... 4, 5, 10

*Babbitt v. Sweet Home Chapter of Communities for Great Ore.*,
515 U.S. 687 (1995)..............................................................8

*Bond v. United States*,
572 U.S. 844 (2014)..............................................................7

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984)...........................................................2, 5

*Connecticut Nat. Bank v. Germain*,
503 U.S. 249 (1992)..............................................................3

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018)..........................................................6

*Fed. Commc'ns Comm'n v. Am. Broad. Co.*,
347 U.S. 284 (1954)..............................................................6

*Food and Drug Admin. V. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)...........................................................7, 8

*Good Samaritan Hosp. v. Shalala*,
508 U.S. 402 (1993)............................................................11

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
140 S. Ct. 789 (2020)............................................................8

*Gun Owners of Am., Inc. v. Garland*,
992 F.3d 446 (6th Cir. 2021) ...............................................3, 5

*I.N.S. v. St. Cyr*,
533 U.S. 289 (2001)..............................................................7

iv

*Ladner v. United States*,
358 U.S. 169 (1958)...........................................................................7

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)..............................................................................6

*Liparota v. United States*,
471 U.S. 419 (1985).................................................................. 10, 12

*MCI Telecommunications Corp. v. Am. Tel. & Tel. Co.*,
512 U.S. 218 (1994)..........................................................................7

*McNally v. United States*,
483 U.S. 350 (1987)..........................................................................6

*Miller v. Johnson*,
515 U.S. 900 (1995)..........................................................................7

*Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*,
545 U.S. 967 (2005)..........................................................................6

*Negusie v. Holder*,
555 U.S. 511 (2009)..........................................................................6

*Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers*,
531 U.S. 159 (2001)......................................................................7, 12

*Staples v. United States*,
511 U.S. 600 (1994)..........................................................................4

*State of La., ex rel. Guste v. Verity*,
853 F.2d 322 (5th Cir. 1988) ...........................................................9

*United States v. Alkazahg*,
81 M.J. 764  (N-M. Ct. Crim. App. 2021)........................................6

*United States v. Kozminski*,
487 U.S. 931 (1988)................................................................... 10, 11

*United States v. Mead Corp.*,
533 U.S. 218 (2001)........................................................................12

*United States v. R.L.C.*,
503 U.S. 291 (1992)........................................................................11

*United States v. Thompson/Ctr. Arms Co.*,
   504 U.S. 505 (1992)............................................................................6

*United States v. Wiltberger*,
   18 U.S. (5 Wheat.) 76 (1820) ...........................................................6

*Wayman v. Southard*,
   23 U.S. (10 Wheat.) 1 (1825) .........................................................12

*Whitman v. United States*,
   574 U.S. 1003 (2014)........................................................................8

**Statutes**

16 U.S.C. § 1531 ...................................................................................8

16 U.S.C. § 1532 ...................................................................................8

16 U.S.C. § 1533 ...................................................................................9

16 U.S.C. § 1534 ...................................................................................9

16 U.S.C. § 1535 ...................................................................................9

16 U.S.C. § 1536 ...................................................................................9

16 U.S.C. § 1537 ...................................................................................9

16 U.S.C. § 1538 ...................................................................................9

16 U.S.C. § 1539 ...................................................................................9

16 U.S.C. § 1540 ...................................................................................9

18 U.S.C. § 921 ...........................................................................3, 4, 9

18 U.S.C. § 922 ...............................................................................3, 9

18 U.S.C. § 924 .................................................................................10

26 U.S.C. § 5845 .........................................................................1, 2, 3

Pub. L. No. 73–474, 48 Stat. 1236...................................................1

Pub. L. No. 99-308, 100 Stat. 449 ..................................................9

**Other Authorities**

Bump-Stock-Type Devices Rule,
   83 Fed. Reg. 66,514 (Dec. 26, 2018).....................................2, 4, 11

Transcript of Oral Argument, *Esquivel-Quintana v. Sessions*,
137 S. Ct. 1562 (2017) (No. 16-54)......................................................................5

## INTEREST OF AMICUS CURIAE[1]

The National Rifle Association of America, Inc. ("NRA") is widely recognized as America's foremost defender of Second Amendment rights. It was founded in 1871, by Union generals who sought to promote firearms marksmanship and expertise amongst the citizenry. Today, the NRA has approximately five million members. The NRA has a significant interest in this case. Many NRA members possessed or wish to possess bump stocks, and their freedom to do so is hindered by the Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") rule reclassifying bump stocks as machineguns.

## INTRODUCTION

Since 1934, Congress has consistently defined machineguns by their ability to fire multiple rounds "by a single function of the trigger." Pub. L. No. 73–474, 48 Stat. 1236; 26 U.S.C. § 5845(b). Non-mechanical bump stocks[2] were not classified as machineguns because—unlike machineguns—the trigger must be pulled, re-

---

[1] All parties consented to the filing of this brief. No counsel for a party authored this brief in any way. No party or party's counsel made contributions to fund the preparation or submission of this brief. No person, other than the NRA, its members or its counsel, made contributions to fund the preparation or submission of this brief.

[2] All references to bump stocks in this brief are to non-mechanical bump stocks.

leased, and reset after every round is discharged. That changed in 2018, when ATF promulgated the Bump-Stock-Type Devices Rule, 83 Fed. Reg. 66,514 (Dec. 26, 2018) ("Final Rule"), which now classifies bump stocks as machineguns and is the subject of this litigation.

## ARGUMENT

ATF got it wrong in the Final Rule. Bump stocks are not machineguns. In defining machinegun, Congress focused solely on the trigger's mechanics, not the process by which the trigger is pulled. 26 U.S.C. § 5845(b). The statutory benchmark is clear, and ATF missed it.

ATF's error cannot be salvaged by deferring to its expertise under *Chevron*. *Chevron* provides a two-step framework for reviewing an agency's interpretation of a statute. First, courts review the statutory text to determine if Congress has spoken on the issue. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 n.9 (1984). If Congress's intentions are clear, that is the end of the matter. *Id*. at 842–43. But if, and only if, the statute is "silent or ambiguous with respect to the specific issue," courts proceed to step two to determine if the agency's interpretation of the statute is reasonable. *Id*. at 843.

Not only is the statute clear, it defines criminal conduct. 18 U.S.C. §§

921(a)(23), 922(o). "[C]riminal laws are for courts, not for the Government, to construe." *Abramski v. United States*, 573 U.S. 169, 191 (2014). A panel of the Sixth Circuit correctly found *Abramski's* edict to be "clear, unequivocal, and absolute." *Gun Owners of Am., Inc. v. Garland*, 992 F.3d 446, 455 (6th Cir. 2021), *reh'g en banc granted, opinion vacated*, 2 F.4th 576 (2021), and on *reh'g en banc*, 19 F.4th 890 (2021). That should be the end of the matter. But even if it were appropriate to disregard Supreme Court precedent, it is inappropriate to defer to ATF's interpretation of "machinegun" because (1) the statute is clear, (2) the rule of lenity necessarily resolves any ambiguities in favor of criminal defendants, and (3) *Chevron's* purposes are misplaced in the criminal arena.

## I.    CONGRESS DEFINED MACHINEGUNS EXCLUSIVELY BY THE TRIGGER'S MECHANICS.

"When the words of a statute are unambiguous, … 'judicial inquiry is complete.'" *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992) (citations omitted). A "machinegun" is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, *by a single function of the trigger*." 26 U.S.C. § 5845(b) (emphasis added); 18 U.S.C. § 921(a)(23). This definition is based on the trigger's mechanics, nothing else. The term "automatically" is also clear: automatic fire occurs by "a single func-

tion of the trigger." *Id.*; *Staples v. United States*, <u>511 U.S. 600, 602</u> n.1 (1994); *Aposhian v. Wilkinson (Aposhian II)*, <u>989 F.3d 890, 895</u> (10th Cir. 2021) (Tymkovich, J. dissenting). That clarity is further reinforced by Congress's definition of "semiautomatic rifle," which "requires a separate pull of the trigger to fire each cartridge." <u>18 U.S.C. § 921(a)(28)</u>; *Staples*, <u>511 U.S. 602</u> n.1.

Unburdened by ambiguity in 2006, ATF concluded that Congress "equated 'single function of the trigger' with 'single pull of the trigger.'" <u>83 Fed. Reg. at 66,517</u> (citation omitted). ATF then concluded that bump stocks do not meet the statute's objective criteria for "machineguns" ten times from 2008 to 2017. *Id.* at 66,517. There was no ambiguity in the statute then. There is none now.

But in the Final Rule, ATF moved the goalposts and reversed its consistent interpretation. ATF now declares bump stocks to be machineguns by claiming they "produce[] more than one shot … after a single pull of the trigger, so long as the trigger finger remains stationary on the device's ledge." *Id.* at 66,519. There is an insurmountable problem with that statement: ATF admits—in the same paragraph— that "the trigger resets" after each round is discharged. *Id.* "Shooters use bump-stock-type devices *with semiautomatic firearms* to accelerate the firearms' cyclic firing rate to *mimic automatic fire*." *Id.* at 66,516 (emphasis added). Mimicking

4

automatic fire does not constitute automatic fire under the statute. *Aposhian II*, 989 F.3d at 895 (Tymkovich, J. dissenting).

This bears repeating: the trigger on a bump stock "must be released, reset, and pulled again," by the shooters finger, every time an additional round is discharged, *Garland*, 992 F.3d at 471; *Aposhian v. Barr (Aposhian I)*, 958 F.3d 969, 993, 995 (10th Cir. 2020) (Carson, J., dissenting).

Had Congress chosen to define machineguns by the particular motion of the shooter's trigger finger or the rate of fire, then those factors would be relevant. But Congress did not. *Aposhian II*, 989 F.3d at 895 (Tymkovich, J. dissenting). By looking to those factors, ATF went off target.

## II.    THE RULE OF LENITY RESOLVES ANY AMBIGUITY IN LIEU OF *CHEVRON* DEFERENCE.

If there was any ambiguity in § 5845(b), the question for the Court would be how to resolve it: in favor of a criminal defendant under the rule of lenity or deferring to the agency's interpretation under *Chevron*. As Chief Justice Roberts said, these two doctrines cannot "coexist" because "[t]hey each point in the opposite direction based on the same predicate." Transcript of Oral Argument at 12, *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017) (No. 16-54). Fortunately, answering that question

5

is not hard. *Chevron's* structure and Supreme Court precedent lead to one conclusion: the rule of lenity applies.

1. If *Chevron* applies at all, then the Court must apply the traditional tools of statutory construction at step one. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018). This includes the rule of lenity, which is as traditional as it gets. *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820); *see also United States v. Alkazahg*, 81 M.J. 764, 778–84 (N-M. Ct. Crim. App. 2021) (applying the canons of construction and the rule of lenity to determine that bump stocks are not machineguns). And once the rule of lenity is applied, any ambiguity is resolved, and "'*Chevron* leaves the stage.'" *Epic Sys. Corp.*, 138 S. Ct. at 1630 (citation omitted).

The Supreme Court has constantly applied the rule of lenity instead of deferring to an agency's preferred interpretation of a statute, both before and after *Chevron*. *Negusie v. Holder*, 555 U.S. 511, 518 (2009); *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 985 (2005); *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004); *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517–18 (1992) (plurality); *McNally v. United States*, 483 U.S. 350, 360 (1987); *Fed. Commc'ns Comm'n v. Am. Broad. Co.*, 347 U.S. 284, 296 (1954). There is no reason to disregard that long line of consistent precedent here.

6

This approach is also on par with the Supreme Court's application of other substantive canons instead of *Chevron*. *Bond v. United States*, 572 U.S. 844, 859–60 (2014) (applying the federalism canon to resolve ambiguity in the term "chemical weapon"); *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers*, 531 U.S. 159, 172–73 (2001) (federalism canon); *Miller v. Johnson*, 515 U.S. 900, 923 (1995) (constitutional avoidance canon); *I.N.S. v. St. Cyr*, 533 U.S. 289, 320 n.45 (2001) (retroactive canon) (abrogated by statute). Applying the rule of lenity here is consistent with these precedents.

If there was any remaining doubt about *Chevron's* application to criminal laws, the "major question" doctrine resolves it. Courts do not defer to agencies on important political and economic questions because Congress is likely to have answered those itself. *Food and Drug Admin. V. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159–60 (2000); *MCI Telecommunications Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 231 (1994). That is precisely why courts "'should not derive criminal outlawry from some ambiguous implication.'" *Ladner v. United States*, 358 U.S. 169, 177 (1958) (citation omitted).

The *Brown & Williamson Tobacco* Court found that the country's long and unique political history with tobacco made it "highly unlikely" that Congress would

have ambiguously granted the FDA authority to regulate cigarettes through a strained reading of the word "safety." 529 U.S. at 159–60. The country likewise has a long and unique political history with firearms, which—unlike cigarettes—are safeguarded by a fundamental constitutional right. It is just as, if not more, unlikely that Congress would have subtly granted ATF the authority to regulate any firearm under a strained and shifting reading of a statutory term.

2. The only authority for deferring to an agency's interpretation of a criminal statute is *Babbitt v. Sweet Home Chapter of Communities for a Great Ore.*, 515 U.S. 687 (1995). But *Babbitt* is inconsistent with all of the above-mentioned cases—many of which were subsequently decided. *Babbitt* has also been criticized, which limits its persuasiveness. *Whitman v. United States*, 574 U.S. 1003, 135 S. Ct. 352, 353–54 (2014) (Statement of Scalia, J.,); *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 140 S. Ct. 789, 790 (2020) (Statement of Gorsuch, J.,).

But there is another material distinction between *Babbitt* and this case. The statutory scheme at issue in *Babbitt*, the Endangered Species Act ("ESA") 16 U.S.C. §§ 1531-44, is primarily regulatory. Its purpose is to conserve species to the point where they no longer need the ESA's protections. *Id*. §§ 1531(b), 1532(3). The ESA is codified under Title 16, Conservation. And while imposing misdemeanor criminal

liabilities for unlawfully taking, possessing, importing, exporting, or selling an endangered species is one conservation tool authorized by the ESA, *id*. §§ 1538(a), 1540(b), the other non-criminal regulatory tools paint a far broader picture. *Id*. §§ 1533-1537. Moreover, the ESA's prohibited criminal acts are not absolute. The statute gives the Secretaries of Interior and Commerce discretionary authority to permit an otherwise unlawful act, including taking a species, in certain conditions. *Id*. §§ 1539(a)-(b), (e). And Finally, the ESA promotes science-based wildlife conservation, an area where agencies are afforded the most deference. *State of La., ex rel. Guste v. Verity*, 853 F.2d 322, 329 (5th Cir. 1988).

In contrast, the Gun Control Act of 1968 ("GCA"), 18 U.S.C. §§ 921 et seq., as amended by Pub. L. No. 99-308, 100 Stat. 449 (1986), is codified under Title 18 of the United States Code, Crimes and Criminal Procedure. "Congress's principal purpose in enacting the statute [was] to curb crime." *Abramski*, 573 U.S. at 181 (citation and quotations omitted). There are only two circumstances where a machinegun may be lawfully possessed by non-Federal-Firearms-License holders: if it is possessed under the authority of a government agency or if it was possessed before May 19, 1986. 18 U.S.C. § 922(o)(2). Thus, unlike the ESA, which authorizes exemptions for its prohibited criminal acts, 16 U.S.C. § 1539, the GCA bans private

ownership of machineguns. *Aposhian II*, 989 F.3d at 895 (Tymkovich, J. dissenting). Moreover, unlawful possession of a machinegun is "a felony punishable by up to *ten years of imprisonment*." *Id*. (citing 18 U.S.C. § 924(a)(2)) (emphasis in original). Unlike the ESA, the GCA's criminal consequences are "enormous" when compared to the "limited" scope of its civil regulatory regime for pre-1986 machineguns. *Id*. And because the GCA is overwhelmingly criminal, ATF's position is "not relevant at all." *Abramski*, 573 U.S. at 191.

## III. THE POLICIES BEHIND THE RULE OF LENITY ARE FURTHERED WHEN APPLIED HERE WHILE THE POLICIES BEHIND *CHEVRON* ARE DUBIOUS.

The Supreme Court looks to the purposes behind the rule of lenity to determine if it supplants the government's preferred interpretation of a statute. *United States v. Kozminski*, 487 U.S. 931, 952 (1988). Those purposes are "to promote fair notice to those subject to the criminal laws, to minimize the risk of selective or arbitrary enforcement, and to maintain the proper balance between Congress, prosecutors, and courts." *Id*. Each of those are further served by applying the rule of lenity here.

1. "[T]he rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal." *Liparota v. United States*, 471 U.S. 419, 427

(1985). Although this is "required," it has been referred to a "fiction" because it is unlikely that a criminal will consult the United States Code before acting. *United States v. R.L.C.*, 503 U.S. 291, 309 (1992) (Scalia, J., concurring). But that "necessary fiction descends to needless farce when the public is charged even with knowledge of Committee Reports" and other legislative history. *Id.* If it were possible to descend any lower, assuming that the public is aware of Federal Register notifications does just that.

2. The rule of lenity also prevents "arbitrary or discriminatory prosecution and conviction." *Kozminski*, 487 U.S. at 949. Arbitrary enforcement is the inherent result of "delegat[ing] to prosecutors and juries the inherently legislative task of determining what type of coercive activities are so morally reprehensible that they should be punished as crimes." *Id.* Again, ATF determined that bump stocks were not machineguns ten times from 2008 to 2017. 83 Fed. Reg. at 66,517. Now ATF has reversed itself.[3] And there is nothing stopping ATF from reversing itself again if it so chooses. That is why "criminal laws are for courts, not for the Government, to construe." *Abramski*, 573 U.S. at 191.

---

[3] Any deference ATF may be due here gets reduced "considerably" because ATF flipped its position. *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993).

11

3. Lastly, the rule of lenity preserves the separation of powers. *Chevron* is founded on the premise that Congress delegates authority to the executive branch through ambiguities or gaps in statutes. *United States v. Mead Corp*., 533 U.S. 218, 227 (2001). But the power to create crimes lies exclusively with Congress. *Liparota*, 471 U.S. at 424, 427. Congress cannot "delegate … powers which are strictly and exclusively legislative," *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42–43 (1825), and Congress definitely cannot do that "casually" through an ambiguous grant of authority, *Solid Waste Agency of N. Cook Cty*., 531 U.S. at 172–73.

\*     \*     \*

All of the policies behind the rule of lenity are furthered here while the policies behind *Chevron* are dubious. The choice between the two is simple. *Chevron* does not apply.

## CONCLUSION

For the foregoing reasons, the Court should grant the petition for en banc review and reverse the trial court's decision.

Date: February 4, 2022          Respectfully submitted:


*/s/ Michael T. Jean*
Michael T. Jean,

12

MI Bar No. p76010
National Rifle Association of America –
Institute for Legislative Action
11250 Waples Mill Road
Fairfax, VA, 22030
703-267-1158
MJean@nrahq.org

*Attorney for Amicus Curiae National Rifle
Association of America*

13

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the word limit of Fed. R. App. P. 29(b) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,590 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Date: February 4, 2022

/s/ Michael T. Jean
Michael T. Jean

*Attorney for Amicus Curiae National Rifle Association of America*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on February 4, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: February 4, 2022

*/s/ Michael T. Jean*
Michael T. Jean

*Attorney for Amicus Curiae the National Rifle Association of America*

15